UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE DAVID NORKIN,<br>　　　　　Debtor, | Case No. 97-50043<br>Chapter 7 |
| FRIEMA NORKIN,<br>　　　　　Plaintiff, | |
| -against- | 02　5053 AHWS<br>Adv. Proc. No. |
| DAVID NORKIN,<br>　　　　　Defendant. | |

150/537066

## COMPLAINT

　　The Plaintiff, Friema Norkin, by her attorneys, Jorden Burt LLP, complaining of the Defendant avers as follows:

　　1.　This is an Adversary Proceeding brought pursuant to Federal Bankruptcy Rule 7001 *et seq.* and § 523 of the Bankruptcy Code, seeking a determination that the debts owed to Plaintiff Friema Norkin by Debtor, in accordance with a certain Separation Agreement dated November 21, 1990 between David D. Norkin and Friema Norkin, as incorporated by reference in a judgment of dissolution dated November 21, 1990, are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(5) and (a)(15). Plaintiff further seeks a determination that certain debts arising from Debtor's fraudulent conduct as set forth herein are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

### PARTIES

　　2.　Plaintiff Friema Norkin, is the former spouse of Debtor/Defendant, David Norkin.

　　3.　Debtor/Defendant David Norkin (hereinafter "Debtor") originally filed for protection under chapter 11 of the United States Bankruptcy Code (Case No. 97-50043) ("Norkin Bankruptcy").



4. On or about May 23, 2002, the Bankruptcy Court converted the Norkin Bankruptcy from chapter 11 to chapter 7.

## JURISDICTION AND VENUE

5. This adversary proceeding is initiated pursuant to 11 U.S.C. § 523 and Bankruptcy Rule 7001, *et seq.*, for a determination of nondischargeability of certain debts of the Debtor.

6. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1) and 1334(b).

7. Each of the causes of action in this adversary proceeding are "core" proceedings within the meaning of 28 U.S.C. §§ 157(b)(2)(I)&(J).

8. This Court is the proper venue pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

### Debts Arising from Separation Agreement and Judgment of Dissolution

9. Friema Norkin married Debtor on October 14, 1958, and was divorced from him by judgment of dissolution of the Superior Court of Connecticut on November 21, 1990.

10. The dissolution judgment incorporated by reference a certain separation agreement between Friema Norkin and Debtor dated November 21, 1990 ("Separation Agreement"). A copy of the Separation Agreement is attached hereto as Exhibit A.

11. As a condition of his divorce from Friema Norkin, Debtor has agreed that all debts arising from the Separation Agreement are nondischargeable, as provided for in Article XV of the Separation Agreement.

12. Pursuant to the terms of the Separation Agreement, specifically Article III, Section 3.1, Debtor was required to pay Friema Norkin the following lump sum and periodic payments:

(a) Three Hundred Twenty-Five Thousand Dollars ($325,000) within one (1) year from the date of the execution of the Separation Agreement;

(b) Three Hundred Fifty Thousand Dollars ($350,000) within three (3) years from the date of the execution of the Separation Agreement;

(c) Six Hundred Fifty Dollars ($650) per week commencing on July 16, 1990 through July 15, 1991 (totaling $33,800);

(d) A sum equal to the monthly mortgage payment (principal and interest) due Citicorp Mortgage for the cooperative apartment located at 27 East 65th Street, New York, New York ("cooperative apartment"), commencing on July 1, 1990 through July 31, 1991; and

(e) A sum equal to the monthly maintenance charges for the cooperative apartment, including but not limited to real property taxes, commencing on July 1, 1990 through July 31, 1991.

13. Debtor has failed to pay Friema Norkin any lump sum or periodic payments set forth above in paragraph 12(a)-(e) due under the Separation Agreement.

14. Upon the lump sum and periodic payments becoming due, and at various times thereafter, Debtor repeatedly promised Friema Norkin that he would pay her all of the money he owed her under the terms of the Separation Agreement, plus interest. In consideration of, and in reliance on, said promises, Friema Norkin agreed to forbear from taking action against Debtor. Despite Debtor's obligations and promises as aforesaid, no such payments have been made.

15. Pursuant to Article III, Sections 3.3 and 3.4 of the Separation Agreement, Debtor agreed to pay Friema Norkin twelve and one-half percent (12.5%) of any payments he received on account of certain transactions by and between Britestarr Homes, Inc. ("Britestarr") and any third party.

16. Upon information and belief, Britestarr has received money and other valuable consideration, believed to be in excess of $1 million, as a result of a transaction with a third party. The payments received by Britestarr were for the benefit of Debtor.

17. Debtor has failed to pay Friema Norkin 12.5% of such payments as required by the Separation Agreement.

18. Pursuant to Article IV, Section 4.2 of the Separation Agreement, Debtor agreed to make all monthly mortgage payments and maintenance payments on the cooperative apartment due on or before the date of the execution of the Separation Agreement.

19. Debtor also agreed not to cause the holder of the first mortgage, Citicorp Mortgage, to foreclose on the mortgage secured by the cooperative apartment where Friema Norkin was residing.

20. Debtor failed to make certain mortgage payments on the cooperative apartment on or before November 21, 1990, the date the Separation Agreement was executed, and made no mortgage payments thereafter.

21. As a result of Debtor's failure to make the mortgage payments, Citicorp Mortgage foreclosed its mortgage and the cooperative apartment was sold.

22. Debtor's failure to make the mortgage payments on the cooperative apartment and the subsequent foreclosure of the property deprived Friema Norkin of her ownership interest in

the cooperative apartment, caused her to be evicted from her residence, and damaged her financial credit.

23. Pursuant to Article VI, Section 6.1 of the Separation Agreement, Debtor agreed to provide and fully pay for medical insurance for Friema Norkin.

24. Debtor has failed to provide medical insurance for Friema Norkin.

25. Pursuant to Article VII, Section 7.1 of the Separation Agreement, Debtor agreed to establish a life insurance trust in the amount of Four Hundred Thousand Dollars ($400,000), name Friema Norkin as the primary beneficiary of the life insurance trust, and pay all premiums due under the life insurance policy.

26. Debtor has failed to pay any of the premiums due under the life insurance policy.

Debts Arising from Debtor's Fraudulent Conduct

27. Pursuant to Article III, Section 3.2 of the Separation Agreement, Debtor was required to secure his indebtedness to Friema Norkin as provided for in Article III, Section 3.1 (as set forth herein at paragraph 12(a)-(e), *supra.*), by executing and delivering to Friema Norkin a mortgage upon the premises located at 62 Sherwood Avenue, Greenwich, Connecticut.

28. Debtor executed and delivered to Friema Norkin a mortgage on the Sherwood Avenue residence securing his indebtedness. The mortgage was dated November 21, 1990 and recorded in Book 2084 at Page 52 of the Greenwich Land Records.

29. Having failed to pay Friema Norkin any lump sum or periodic payments set forth above in paragraph 12(a)-(e) due under the Separation Agreement, by September 1997, Debtor owed Friema Norkin approximately $1,200,000 (total payments plus interest), and Friema Norkin was poor, without assets, and unable to meet her reasonable daily living expenses.

30. Debtor twice paid $100,000 to Citicorp Mortgage, holder of the first mortgage upon the residence, in order to delay and defer for six months on each occasion its pending foreclosure action upon the property.

31. On January 9, 1997, Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code, *inter alia,* further to defer and delay the foreclosure sale upon his said residence, which he valued (in his schedule of assets and liabilities) as being in excess of $3,000,000.

32. At all relevant times, Debtor knew that the appraised value of the property on Sherwood Avenue was in excess of $3,000,000; that Friema Norkin's mortgage upon the property was a valid second lien having a value in excess of $1,200,000; that Friema Norkin's mortgage was subject only to the first mortgage of Citicorp Mortgage; and that Friema Norkin's mortgage was secured.

33. At all relevant times, Friema Norkin depended upon and trusted Debtor and believed that he would take all necessary steps to protect her and would no nothing contrary to her interest and had a confidential relationship with Debtor.

34. Despite the fact that Debtor knew Friema Norkin's mortgage was secured by the residence, Debtor told Friema Norkin her mortgage was valueless, that the Sherwood Avenue property had no equity, and that Friema Norkin should assign the debt and mortgage to Chase Mortgage Ltd. ("Chase") because there was no value to the mortgage.

35. Unbeknownst to Friema Norkin, Chase, through its duly authorized agent Robert Herskowitz, offered Debtor $30,000 if he could persuade Friema Norkin, for nominal and token consideration, to assign her mortgage on the residence and the debt secured thereby to Chase.

Chase further offered to Debtor to take legal measures before the Bankruptcy Court to delay and forestall the pending foreclosure sale of the property pursuant to the auspices of the Bankruptcy Court.

36. Debtor, Chase, and Herskowitz jointly schemed and conspired to convince Friema Norkin that there was no equity in her mortgage; and that she would receive nothing from any foreclosure sale of the property; and that Friema Norkin's mortgage was subordinate to a federal tax lien incurred by Debtor on the property, when Debtor, Chase, and Herskowitz knew that Friema Norkin's mortgage was secured and was prior in right to that of the Internal Revenue Service and its tax lien against Debtor.

37. In accordance with his agreement with Chase, Debtor induced and persuaded Friema Norkin to transfer her mortgage, which he represented to be valueless, to Chase for no real and valuable consideration other than $10.00 paid to Friema Norkin and $400.00 paid to an attorney supposedly representing her but, in fact, chosen by Debtor.

38. Debtor and Chase concealed from Friema Norkin that Chase agreed to pay Debtor $30,000 if Friema Norkin would assign said mortgage to Chase.

39. Debtor promised Friema Norkin that she would at some future time receive $5,000 from him if she would execute the assignment of mortgage and dissuaded her from engaging independent counsel to advise and represent her.

40. On September 26, 1997, Friema Norkin, accompanied by an attorney chosen by Debtor, went to the office of Chase's Connecticut attorney and executed an assignment of said debt and mortgage to Chase, together with a mortgagee estoppel certificate prepared by Chase's attorney stating that the principal sum due on the mortgage was $675,000, together with interest from November 21, 1990, at the rate of 10% per annum.

41. Chase paid Friema Norkin at said closing a check in the sum of $10.00 and further gave her a check in the sum of $400.00 for her to endorse in their presence to the attorney chosen by Debtor. Thus, Friema Norkin received a net total of $10.00 for her debt and mortgage.

42. Having procured the assignment of Friema Norkin's debt and mortgage as aforesaid, Chase prepared and filed with the U.S. Bankruptcy Court a motion dated December 15, 1997 to delay the pending sale of the Sherwood Avenue residence and represented to the Bankruptcy Court that they would contribute up to $50,000 for repairs to the roof on the property, which would be expected to increase its value by up to $500,000, and proposed a plan of reorganization for Debtor which would transfer to the bankrupt estate the final $400,000 in sale proceeds which Chase would be entitled to receive on account of the mortgage Friema Norkin assigned to Chase. Chase represented to the Bankruptcy Court that their mortgage debt was approximately $1.1 million consisting of principal and interest but exclusive of any other charges, such as legal fees; that the then current fair market value of the property was $3.1 million; and that the prior debt of Citicorp Mortgage was $1,644,487.50. Assuming the accuracy of these allegations, the mortgage originally given by Debtor to Friema Norkin was fully secured.

43. In March 1998, Debtor, Chase, and Citicorp Mortgage entered into a written stipulation which was approved by the U.S. Bankruptcy Judge on April 7, 1998. Pursuant to this stipulation, the sale of the Sherwood Avenue premises was postponed to October 20, 1998; the Citicorp secured first mortgage debt was stipulated to be $1,819,508.94; the debt under the mortgage originally given by Debtor to Friema Norkin was $1,218,000; and that the fair market value of the property was between $2,900,000 and $3,250,000.

44. Neither Debtor nor Chase at any time advised Friema Norkin, but instead concealed from her, that her mortgage had substantial value; that the Internal Revenue Service tax lien was subsequent and subordinate to her mortgage; and that the value of the property was in excess of $3,000,000 so as to make said mortgage fully secured.

45. At all relevant times, Debtor and Chase knew or should have known that Friema Norkin was without independent representation, poor and without substantial resources, and in desperate need of funds due to the nonpayment by Debtor of his obligations pursuant to the aforesaid Separation Agreement and dissolution judgment of November 21, 1990.

46. Based upon the foregoing, Debtor induced Friema Norkin to assign her mortgage rights in excess of $1.2 million to Chase for $10.00 through false pretenses, false and misleading representations and/or actual fraud.

## FIRST CLAIM

47. Plaintiff repeats and realleges paragraphs 1 through 26 as if set forth fully herein.

48. Title 11 U.S.C. § 523(a)(5) provides that a debt is not dischargeable in bankruptcy if it is a debt to a former spouse for alimony, maintenance, or support in connection with a separation agreement or divorce decree.

49. Debtor's obligations under the Separation Agreement and judgment of dissolution to pay Friema Norkin the lump sum and periodic payments set forth in paragraph 12(a)-(e), to not cause the cooperative apartment to be foreclosed, and to provide and pay for medical insurance and life insurance constitute obligations to provide alimony, maintenance, and/or support to Friema Norkin under federal bankruptcy law.

50. Debtor's failure to make the payments set forth in paragraph 12(a)-(e) to Friema Norkin under the Separation Agreement and judgment of dissolution, Debtor's causing of the cooperative apartment to be foreclosed by failing to make the monthly mortgage payments, and Debtor's failure to provide and pay for medical insurance and life insurance have deprived Friema Norkin of alimony, maintenance, and/or support under federal bankruptcy law.

51. As a result, Plaintiff seeks a determination that the debts arising from Debtor's failure to make the lump sum an periodic payments set forth in paragraph 12(a)-(e) of the Separation Agreement, the foreclosure of the cooperative apartment, and Debtor's failure to provide and pay for medical insurance and life insurance are nondischargeable under 11 U.S.C. § 523(a)(5).

## SECOND CLAIM

52. Plaintiff repeats and realleges paragraphs 1 through 26 as if set forth fully herein.

53. Title 11 U.S.C. § 523(a)(15) provides that a debt not of the kind described in § 523(a)(5) that is incurred by the debtor in connection with a separation agreement or divorce decree is not dischargeable in bankruptcy.

54. As set forth in this Complaint, Debtor has incurred debts resulting from his failure to satisfy his obligations owed to Friema Norkin under the terms of their Separation Agreement and judgment of dissolution.

55. As a result, Plaintiff seeks a determination that the debts arising from Debtor's failure to satisfy his obligations owed to Friema Norkin under the terms of the Separation Agreement are nondischargeable under 11 U.S.C. § 523(a)(15), including Debtor's failure to make the lump sum and periodic payments set forth in paragraph 12(a)-(e), the debts arising from the foreclosure of the cooperative apartment, and the debts arising from Debtor's failure to

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

IN THE MATTER OF  David Novkin
-v-
Friema Novkin

DEBTOR(S)

CASE NO. 97-50043

ADV. NO. 02-5073

DOC. #

CLAIM #

# SUBSTITUTION FORM

The attachments to this document were not imaged. If these attachments need to be reviewed and/ or copied, please refer to the original case file.

DEBORAH HUNT

CLERK OF COURT

provide and pay for medical insurance and life insurance, to the extent such debts do not fall within the purview of § 523(a)(5), and in the event Debtor is adjudged to have an ownership interest in Britestarr, Debtor's failure to pay Friema Norkin 12.5% of the sums he received on account of Britestarr.

## THIRD CLAIM

56. Plaintiff repeats and realleges paragraphs 1 through 46 as if set forth fully herein.

57. Title 11 U.S.C. § 523(a)(2)(A) provides that a debt shall not be discharged for money to the extent obtained by false pretenses, a false representation, or actual fraud.

58. Debtor induced Friema Norkin to assign her mortgage rights in excess of $1.2 million to Chase for $10.00 through false pretenses, false and misleading representations and/or actual fraud.

59. As a result, Friema Norkin seeks a determination that the debts arising from Debtor's fraudulent conduct by inducing Friema Norkin to assign her valuable mortgage for essentially no consideration are nondischargeable under 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Plaintiff respectfully prays for:

I. On the First Claim, a determination of nondischargeability under 11 U.S.C. § 523(a)(5);

II. On the Second Claim, a determination of nondischargeability under 11 U.S.C. § 523(a)(15);

III. On the Third Claim, a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A);

IV.   The costs of this action; and

V.    Such other and further relief as this Court may deem just and proper.


Dated:   August 26, 2002

                    PLAINTIFF,
                    FRIEMA NORKIN


By_____
    Jeffrey L. Williams (ct05446)
    Christopher G. Barnes (ct23166)
    JORDEN BURT LLP
    406 Farmington Ave., Suite 2006
    Farmington, Connecticut 06032
    Tel: (860) 676-7715
    Fax: (860) 676-7732
    Her Attorneys

2000 USBC, District of Connecticut

| B 104 (Rev 2/92) | ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court use Only) |
|---|---|---|
| **PLAINTIFFS** FRIEMA NORKIN | **DEFENDANTS** DAVID NORKIN | |
| **ATTORNEYS** (Firm Name, Address, Telephone No.) JORDEN BURT LLP   (860) 676-7715 406 Farmington Ave., Suite 2006 Farmington, CT 06032 | **ATTORNEYS** (If Known) | |

**PARTY** (Check one box only)   ☒ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☐ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Plaintiff seeks determination of nondischargeability of certain debts under 11 U.S.C. Sections 523(a)(5),(15), and (a)(2)(A).

**NATURE OF SUIT**
(Check the one most appropriate box only.)

☐ 454 To Recover Money or Property
☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
☐ 458 To obtain approval for the sale of both the interest in the estate and of a co-owner in property
☐ 424 To object or to revoke a discharge 11 U.S.C. §727

☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan
☒ 426 To determine the dischargeability of a debt 11 U.S.C. §523
☐ 434 To obtain an injunction or other equitable relief
☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action
☐ 459 To determine a claim or cause of action removed to a bankruptcy court
☐ 498 Other (specify)

**ORIGIN OF PROCEEDINGS** (Check one box only.)   ☒ 1 Original Proceeding   ☐ 2 Removed Proceeding   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another Bankruptcy Court   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| DEMAND | NEAREST THOUSAND $ | OTHER RELIEF SOUGHT Determination of nondischargeability of debts. | ☐ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR David Norkin | BANKRUPTCY CASE NO. 97-50043 | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING Connecticut | DIVISIONAL OFFICE Bridgeport | NAME OF JUDGE Alan H.W. Shiff |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

**FILING FEE** (Check one box only)   ☒ FEE ATTACHED   ☐ FEE NOT REQUIRED   ☐ FEE IS DEFERRED

| DATE August 26, 2002 | PRINT NAME Jeffrey L. Williams | SIGNATURE OF ATTORNEY (OR PLAINTIFF) /s/ Jeffrey L. Williams |
|---|---|---|